Rosa Dávila, Plaintiff and Appellee, *v.* Heirs of Juan González Cruz, Defendants and Appellants.

No. 8442. Argued April 17, 1942.—Decided May 19, 1942.

*C. Domínguez Rubio* for appellants. *Víctor M. Pons* for appellee.

MR. JUSTICE SNYDER delivered the opinion of the court.

██ This is an appeal from a judgment for the plaintiff in a suit on a note. The note was originally typewritten and read as follows:

"Aibonito, August 30, 1923. I promise to pay to Doña Rosa Dávila or her forced heirs the sum of TWO THOUSAND DOLLARS ($2,000.00), with interest at TEN per cent per annum (10%), June 30th of each year being stipulated for the payment of interest, the principal to be paid in the month of May or June of any year desired by the creditor. (Signed) Juan González."

Thereafter the following changes were made in ink on the face of the note: a caret was placed between "thousand" and "dollars", the words "two hundred" were written in the interlinear space above the words "two thousand", and "(2,000.00)" was changed to read "($2,200.00)".

The appellants objected to the admission in evidence of the note on the ground that it had been altered. The lower court held that, in failing to verify their answer, the appellants had admitted the genuineness and execution of the note. Section 119, Code of Civil Procedure (1933 ed.). But that section does not apply to this case, as the purported copy of the note contained in the complaint did not show the above-indicated changes. As transcribed in the complaint, the note read as though it had been originally typewritten for $2,200.00. Section 119 cannot be invoked against the appellants to spell out an admission of the genuineness of a document different from the one set forth in the complaint.

 We need not consider what effect alteration has on a negotiable instrument under the Uniform Negotiable Instruments Act (§§ 477 and 478, Code of Commerce, 1932 ed.). In the first place, this note was executed in 1923 and that Act, enacted in Puerto Rico in 1930, specifically provides that "The provisions of this title do not apply to negotiable instruments made and delivered prior to the taking effect hereof." (§547, Code of Commerce, 1932 ed.). In addition, a note payable, as in the instant case, to "Rosa Dávila or

her forced heirs'', does not comply with the provision of §354 of the same Act that ''An instrument to be negotiable must . . . be payable to order or to bearer . . .''. See *First Nat. Bank* v. *Mayor and City Council,* 108 F. (2) 600; *Kerr* v. *Smith,* 142 N.Y.S. 57.

 However, even in a suit founded on a non-negotiable written instrument, the burden is on the part claiming under the instrument to explain a material alteration appearing on the face of the instrument. Section 471, Code of Civil Procedure (1933 ed.). That section provides as follows:

''The party producing a writing as genuine which has been altered, or appears to have been altered, after its execution, in a part material to the question in dispute, must account for the appearance or alteration. He may show that the alteration was made without his concurrence by another person with whom he is not in privity, or was made with the consent of the parties affected by it, or otherwise properly or innocently made, or that the alteration did not change the meaning or effect of the instrument. *If he does that, he may give the writing in evidence, but not otherwise.''* (Italics ours).

An interlineation in ink raising the amount of a typewritten note constitutes a material alteration thereof. Restatement, Contracts, §435; Williston on Contracts, Revised Edition, Vol. 6, §§ 1901, 1902; 86 American State Reports 96. Section 471 requires a satisfactory explanation of such an alteration even if the alteration be made before delivery of the instrument. *King* v. *Tarabino,* 199 P. 890 (Cal.). See also, *Smith* v. *United States,* 69 U. S. 219, 231; *Ofenstein* v. *Bryan,* 20 App. D. C. 1; Restatement, Contracts, § 434, Comment *a;* Wigmore on Evidence, 3d. ed., vol. IX, §2525; Williston, *supra,* §§ 1891–1917, including 1941 Cumulative Supplement. *Cf. Stubbe Bros. Inc.* v. *Díaz,* 43 P.R.R. 75, 77.

The maker of this note died prior to the filing of this suit. The plaintiff was his ex-wife, whom he had divorced before

he executed the note. The appellee testified in her deposition that this was "a suit for $2,000.00 that I loaned him and $200.00 without interest" and that her son-in-law had typewritten the original note. The son-in-law was in court at the trial, and although counsel for the appellee indicated that he was there to explain the alteration if the court believed that necessary, no such explanation was actually vouchsafed. The court's statement that the alteration only went to the weight of the evidence was clearly in error. In view of the circumstances and pursuant to § 471 of the Code of Civil Procedure, the court should not have admitted the altered note in evidence without an explanation of the alteration, and we must therefore reverse the judgment on that ground.

As a new trial will be required, we deem it appropriate to discuss some of the other questions raised in this case. The district court did not err in overruling the motion for nonsuit on the ground that the suit, filed in 1932, was premature. As the lower court pointed out, "There was evidence to the effect that the plaintiff demanded payment from the predecessor in interest of the defendant subsequent to September, 1928, and, therefore, the debtor was bound to pay his debt in May or June, 1929. The obligation was due and payable from that date, and the plaintiff was entitled to enforce the same by judicial action at any time, without the necessity of again demanding payment."

The appellants' principal defense was that the obligation represented by the note had been discharged by payment by the maker while he was still alive. To establish this defense, the appellants first offered the testimony of a banker and the second wife of the maker that the maker had told them on unspecified dates that he had paid the note herein in 1927 by giving the appellee's son-in-law $2,100.00 with which to build a house for the appellee. Such testimony was hearsay and the lower court did not err in excluding it.

 The district court likewise properly refused to admit in evidence a note on which the maker had made the following notation:

"I want to set forth on this promissory note that this obligation was incurred to pay another promissory note held by Doña Rosa Dávila which has not been delivered to me and was collected by Manuel de Jesús Meléndez to build the house which she has on the road leading to the Barracks the amount of which was two thousand dollars on which I set my hand. (Signed) Juan González Cruz."

The testimony was that the notation was made after the note itself had been executed and paid, and was done on the advice of his banker in preference to a suit against the appellee to obtain and cancel the note herein on the ground of payment. This was a self-serving writing made at least eight months after the event deliberately to provide evidence. It can scarcely be characterized as part of the *res gestae*. *Montaner* v. *Industrial Commission*, 54 P.R.R. 741, 744; *People* v. *Calventy*, 34 P.R.R. 375; Chaffee, The Progress of the Law, 1919–1922, Evidence, 35 Harvard Law Review 428, 447, 448; Morgan, A Suggested Classification of Utterances Admissible as Res Gestae, 31 Yale Law Journal 229; Wigmore on Evidence, 3d ed., vol. VI, §§ 1747, 1750, 1753, 1756.

 However, there was one line of testimony which should have been admitted. Sometimes an act may be susceptible of more than one interpretation, and the intention of the party performing the act becomes material. In that event, a *contemporaneous* oral or written declaration of the intention of the actor is admissible. *Lee* v. *Mitcham*, 98 F. (2d) 298 (C.C.A. D.C.); *Mutual Life Insurance Co.* v. *Hillmon*, 145 U.S. 285.

In the instant case, the lower court improperly excluded the testimony of the maker's widow that he had told her he was going to the bank that day to borrow $2,100.00 to give to his son-in-law in payment of the note herein. This was a contemporaneous declaration of his intention in perform-

ing an ambiguous act (delivery of $2,100.00 to his son-in-law) which was susceptible of several interpretations. The fact that the statement was made before the act does not affect the application of the rule. Indeed, most contemporaneous declarations are made immediately before or after rather than during the act.

We are unable to determine if this same rule can be invoked in favor of a similar statement to the banker on the date the maker applied for the loan of $2,100.00. That depends largely on how much later the $2,100.00 was delivered to the son-in-law. The record fails to disclose the time that elapsed between these two events. If those dates are established at the new trial, the district court will be required to determine if the prior statement to the banker was a contemporaneous declaration within the rule.

The district court found as facts that the maker borrowed $2,100.00 which he placed in his son-in-law's bank account and which the latter used to build a house in which the appellee, her daughter and son-in-law have lived since that date. The lower court nevertheless held that there was no showing either that the son-in-law was the agent of the appellee to receive payment on her behalf or that the appellee had ratified such agency by accepting the benefits thereof. We agree with the district court that the appellants must by competent evidence establish one of these alternatives if their defense of payment is to prevail. *Schweitzer* v. *Bank of America N. T. and S. A.*, 109 P. (2d) 441, 445 (Cal.); Restatement, Agency, §§ 98, 99. The appellants will not meet this burden by relying, as they have done on this appeal, on the mere residence of the appellee in the house in question.

This suit was filed in 1932 on an obligation which was allegedly due in 1929. It was not tried until 1938. The district court held the motion for nonsuit under advisement until 1940. The case was decided on its merits in 1941. We make no effort to assess the blame for this situation on the district court or on either of the parties. But we find it appropriate

to recall the oft-repeated admonition that "Justice delayed, is justice denied." This is a simple case in which the testimony should be comparatively brief. It should be promptly disposed of by new trial.

The judgment of the district court will be reversed and the case remanded for new trial and further proceedings not inconsistent with this opinion.